## IN THE MATTER FOR THE APPLICATION FOR THE COMMITMENT OF JOHN WILLIAMS TO FAIR OAKS HOSPITAL.

Juvenile and Domestic Relations Court
Domestic Relations Division
Essex County

February 16, 1976.

*Ms. Anne C. Singer,* for the juvenile J. W.

*Mr. Thomas W. Clohosey,* for Essex County Hospital.

*Mr. John R. Sailer,* for Fair Oaks Hospital.

COCCHIA, J. J. D. R. C. John Williams, a 15-year-old youth, was admitted to Fair Oaks Hospital as an involuntary patient on November 15, 1975, pursuant to an application by his father (now deceased), two physicians' certificates and a Class B temporary court order signed by Judge Brunetto of the Glen Ridge Municipal Court. On November 24, 1975 the patient signed a request for voluntary admission to Fair Oaks Hospital, which reads as follows:

I, John Williams, the undersigned, of 320 Forest Ave., Glenridge, N. J. [*sic*], County of Essex, and State of New Jersey desirous of being admitted into Fair Oaks Hospital as a voluntary patient, do hereby request that I be admitted, for care and treatment, in accordance with Section 30:4–46 (N. J. S. A.). If this application be approved, I promise to abide by the rules of the institution, and to give 72 hours written notice to the Chief Executive Officer, Medical Director or Chief of Service of my desire to be discharged.

The request was witnessed and signed by Dr. D. H. Gent. On November 26, 1975 Sarah Jean Williams, the sole surviving parent of John, signed a request for voluntary admission to Fair Oaks Hospital on behalf of her son. Pursuant to *R.* 4:74–7(j), which states in pertinent part that

"No minor shall be committed except temporarily to a mental institution for treatment and care of an alleged mental condition on the application of his parent or parents or other person in loco parentis except on court order after hearing pursuant to paragraph (e) hereof,"

A hearing was held by this court on December 8, 1975. At this hearing John testified that he had "behavior problems" at home and in school. He stated that Fair Oaks was a "mental hospital" and he was receiving psychiatric treatment at the hospital. The boy was questioned concerning his understanding of the words "voluntary" and "involuntary." He wanted to remain at the hospital and would leave when "the doctor feels that I'm better." This court was satisfied that John fully understood the nature of a voluntary commitment and realized that he was receiving treatment in a mental hospital.

The issue confronting the court is whether a minor who has been admitted into a public or private mental hospital for treatment with his parent's signature, pursuant to *N. J. S. A.* 30:4–46, may obtain the right to sign himself out on 72 hours notice without parental consent.

The dilemma is how to resolve an apparent conflict between *R.* 4:74–7(j) and *N. J. S. A.* 30:4–46 and 30:4–48. At first glance *R.* 4:74–7(j) requires that a hearing be held pursuant to *R.* 4:74–7(c), and a court order entered before a minor is committed to a mental institution for treatment on the application of his parent. This would mean that before a judgment of commitment is entered the court would have to find "from the evidence presented at the hearing that the institutionalization of the patient is required by reason of his being a danger to himself or the community if he is not so confined and treated." See *R.* 4:74–7(f). This rule was intended to increase protections afforded minors and prevent abuses. It was designed to prevent parents and social service agencies from signing applications for admission by minors to mental hospitals. The rule interposes a hearing and a court order between the application for admission and the judgment of commitment. Yet, we also believe that *R.* 4:74–7 deals with involuntary civil commitments, *In re Geraghty,* 68 *N. J.* 209, 213 (1975), and should not be read to prohibit the voluntary admission of a minor to a mental hospital. It would be absurd to interpret *R.* 4:74–7 so that

a minor could not be admitted to a mental hospital unless the court first found that he presented a danger to himself or the community.

N. J. S. A. 30:4–46 and 30:4–48 were revised in 1965 to provide simplified procedures to encourage the voluntary entrance to and prompt discharge from a mental hospital, and this court will not interpret R. 4:74–7(j) in a fashion that drastically alters the effect of these two statutes in the absence of any strong indication that this is what the rule is designed to accomplish.

Indeed, there is no persuasive evidence to suggest that R. 4:74–7 must be construed so that minors can no longer become voluntary patients even if N. J. S. A. 30:4–46 is fully complied with. Significantly, in the instant case N. J. S. A. 30:4–46 has been followed; the fact that an application for voluntary admission to Fair Oaks Hospital has been signed by John's mother obviates the necessity for the court at this time to decide whether a minor can be admitted to a public or private mental hospital as a voluntary patient without a parental signature. We are not dealing with a situation where a parent refuses to sign an application on behalf of the minor, or where a parent has endeavored to commit a minor against the latter's wishes. This court is of the opinion that R. 4:74–7(j) could come into play in a case dealing with a minor only if the minor did not understand the nature of the proceedings, or if a parent or guardian signed an application for commitment and the minor denied that he desired treatment in a mental hospital. We again stress that the court found at the December 8, 1975 hearing that John understood the nature of the proceedings and comprehended the meaning of his actions.

Furthermore, this court firmly believes that John Williams does not require parental consent to leave Fair Oaks Hospital. N. J. S. A. 30:4–48 makes no distinctions as to age and does not state that only an applicant can sign out a voluntary patient. The relevant sections of the statute are as follows:

A person admitted to any mental hospital under section 30:4-46 of this Title may be discharged therefrom upon the certificate of the medical director or chief of service, made to the chief executive officer stating either that the said patient is recovered or that further treatment in the hospital is unnecessary or undesirable. *Any such person*, not so discharged, who desires to leave such institution, shall be released therefrom, when, *he or the applicant or some one acting in his behalf*, shall give notice to the chief executive officer, the chief of service when so designated or the medical director of such institution of his desire to be discharged, and such person shall be released at the earliest opportunity possible in accordance with the rules and regulations of the hospital, the department, or the board of chosen freeholders, as the case may be, but in every case prior to the expiration of 72 hours. [Emphasis supplied]

To require parental consent to leave the hospital would, in effect, convert John Williams' status from that of a voluntary patient to that of an involuntary patient. This court will not be a party to such a situation. If the hospital authorities believe that John possesses a diagnosed mental illness that will probably imperil life, person or property if he is discharged, they may make an application to this court for an order authorizing the hospitalization of this youth. as provided for in *Title* 30. See *N. J. S. A.* 30:4-48. This option to invoke involuntary commitment procedures certainly provides sufficient protection for society from any potential dangerous activity by John.

Since the court has found that John Williams understood the nature of a voluntary commitment and grasped the significance of the December 8 proceedings, and since Mrs. Williams has signed an application for voluntary admission to Fair Oaks Hospital on behalf of her son, this court directs that John Williams be considered a voluntary patient in that hospital with the right to sign himself out of the hospital without parental approval.